

FILED & ENTERED

JAN 18 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum          DEPUTY CLERK

**<u>NOT FOR PUBLICATION</u>**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:12-bk-26069-RK |
| ALLEN B. SHAY, | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S MOTION FOR STAY PENDING APPEAL** |

   Pending before the court is the motion of Debtor Allen B. Shay ("Debtor") for a stay pending appeal ("Motion"), Electronic Case Filing Number ("ECF") 188, of the Order Granting in Part and Denying in Part Motion of Chapter 7 Trustee for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens; (2) Approving Overbid Procedure; (3) Approving Payment of Real Estate Brokers' Commissions; (4) Finding Purchasers are Good Faith Purchasers; and (5) if Necessary, Directing the United States Marshal to Evict the Debtors and any Third Parties from the Real Property (the "Sale Order"), ECF 191, which came on for hearing before the undersigned United States Bankruptcy Judge on January 11, 2017 at 2:30 p.m.  Debtor filed a supplemental brief to his Motion, ECF 205, and Chapter 7 Trustee Alfred H. Siegel ("Trustee") filed an opposition to Debtor's Motion, ECF 211.  At the January 11, 2017 hearing on the Motion,

Andrew Edward Smyth, of SW Smyth LLP, appeared for Debtor.  Anthony A. Friedman, of the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P. appeared for Trustee.

Having considered the Motion, the opposition, Debtor's supplemental brief, the oral argument of the parties at the January 11, 2017 hearing on the Motion, and the record before the court, the court denies the Motion for the reasons stated herein.

## BACKGROUND

On May 7, 2012, Debtor commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C.  ECF 1.  On June 12, 2012, Debtor filed his first amended schedules, ECF 11, and on June 21, 2012, Debtor filed his second amended schedules, ECF 14.  Debtor's Second Amended Schedule A disclosed eight real property interests, including an interest in real property at 1175 Pine Bluff Drive, Pasadena, California ("Pine Bluff Property").  *Id.* at 5.  On January 16, 2013, Trustee filed a Notice of Intention to Abandon Assets (LBR 6004-1) ("Notice of Intent to Abandon"), ECF 42, whereby Trustee stated his intention to abandon Debtor's eight real property interests, including the Pine Bluff Property.  Significantly, the proof of service attached to the Notice of Intent to Abandon did not list all creditors as having been served with the Notice of Intent to Abandon.  *Id.* at 4.

On August 28, 2015, Janet Hurren, a former tenant of Debtor, filed a Notice of Opposition to Abandonment of Real Property and Request for a Hearing, ECF 96, which argued, among other things, that Ms. Hurren is a creditor of Debtor's bankruptcy estate because Debtor was in possession of Ms. Hurren's security deposit, and further, that Ms. Hurren never received a copy of, and was not aware of, Trustee's Notice of Intent to Abandon.  Trustee then filed a Notice of Hearing on Notice of Proposed Abandonment of Property of the Estate Filed by Chapter 7 Trustee, ECF 98, which set the Notice of Intent to Abandon for hearing before the court on September 29, 2015.

At the September 29, 2015 hearing, Debtor Allen B. Shay appeared on behalf of himself as a self-represented party, and Anthony A. Friedman, of the law firm of Levene,

1   Neale, Bender, Yoo & Brill L.L.P. appeared for Trustee. Creditor Janet Hurren appeared

2   on behalf of herself as a self-represented party.  At the conclusion of the September 29,

3   2015 hearing, the court continued the hearing on the Notice of Intent to Abandon to

4   December 8, 2015.  ECF 105.  On November 19, 2015, Debtor filed a reply to Trustee's

5   Notice of Hearing on Notice of Proposed Abandonment of Property of the Estate and

6   argued that the Pine Bluff Property should be abandoned.

7       At the December 8, 2015 hearing, Anthony A. Friedman, of the law firm of Levene,

8   Neale, Bender, Yoo & Brill L.L.P. appeared for Trustee.  Debtor Allen B. Shay appeared

9   for himself as a self-represented party.  On December 11, 2015, the court entered its

10   Order Denying as Ineffective that Certain Notice of Proposed Abandonment of Property

11   of the Estate Filed by Chapter 7 Trustee on January 16, 2013 [Docket No. 42], ECF 127,

12   which determined that Trustee's Notice of Intent to Abandon was ineffective because it

13   was not served on all creditors of the estate and that the estate assets sought to be

14   abandoned under the Notice of Intent to Abandon, including the Pine Bluff Property,

15   remained property of Debtor's bankruptcy estate subject to the sole and exclusive

16   administration of Trustee.

17       After the original bidders, Dmitry Tubis and Helen Kizler, offered to purchase the

18   Pine Bluff Property for $1,200,000, following auction at the December 13, 2016 hearing

19   on the sale motion, the court orally granted and approved the sale to the overbidders,

20   Ken Huynh and Kristian Luong ("Buyers") based on their offer of $1,353,000, then

21   entered the Sale Order reflecting its oral ruling on December 27, 2016.

22                   **DISCUSSION**

23       A stay pending appeal is an exercise of judicial discretion dependent on the

24   circumstances of the particular case.  *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir.

25   2012).  The exercise of such discretion is guided by four factors:

26       (1) whether the stay applicant has made a strong showing that he is likely to
      succeed on the merits; (2) whether the applicant will be irreparably injured

27       absent a stay; (3) whether the issuance of the stay will substantially injure

28

1  the other parties interested in the proceeding; and (4) where the public interest lies.

2  *Id., citing, Nken v. Holder,* 556 U.S. 418 (2009); *California Pharmacists Association v.*

3  *Maxwell-Jolly,* 563 F.3d 847, 850 (9th Cir. 2009)(same factors).  "The party requesting a

4  stay bears the burden of showing that the circumstances justify the exercise of [the

5  court's] discretion.  *Lair v. Bullock,* 697 F.3d at 1203, *quoting, Nken v. Holder,* 556 U.S. at

6  433-434.  The first two factors of likelihood of success on the merits and irreparable harm

7  are the most critical.  *Id.*  Although this test is not elemental, the party seeking a stay

8  must always satisfy the first two factors.  *Nken v. Holder,* 566 U.S. at 435.  ("Once an

9  applicant satisfies the first two factors, the traditional inquiry calls for assessing the harm

10  to the opposing party and weighing the public interest.").

11      **I.**       **Debtor's Likelihood of Success on the Merits**

12         As the Ninth Circuit stated in *Leiva-Perez v. Holder,* 640 F.3d 962 (9th Cir. 2011),

13  the factor of likelihood of success on the merits is also referred to as requiring a

14  "substantial case for relief on the merits," although taken in context it is clear as explained

15  in *Leiva-Perez* that the exact phrasing of this concept is not as important as the general

16  idea that the appellant's chances are more than negligible but less than likely.  *Leiva-*

17  *Perez,* 640 F.3d at 967-968; *see also, In re North Plaza, LLC,* 395 B.R. 113, 121 (S.D.

18  Cal. 2008), *quoting, County of Alameda v. Weinberger,* 520 F.2d 344, 349 n. 12 (9th Cir.

19  1975) ("[s]howing a 'likelihood of success' requires that the movant raise questions going

20  to the merits so serious, substantial, difficult and doubtful as to make them a fair ground

21  for litigation and thus for more deliberate inquiry.").

22         An appeal of an order approving a sale is reviewed for an abuse of discretion.  *In*

23  *re Lewis,* 515 B.R. 591, 594 (9th Cir. BAP 2014).  "A district court abuses its discretion

24  when it makes an error of law, rests its decision on clearly erroneous findings of fact, or

25  when we are left with 'a definite and firm conviction that the district court committed a

26  clear error of judgment.'"  *United States v. Hinkson,* 585 F.3d 1247, 1260 (9th Cir. 2009),

27

28

*quoting, United States v. 4.85 Acres of Land, More or Less, Situated in Lincoln County, Montana*, 546 F.3d 613, 617 (9th Cir. 2008).

Debtor has not made a strong showing of likelihood of success on the merits. Debtor made several different arguments regarding his basis for stay pending appeal through his Motion, his supplemental brief, and through the oral argument of his counsel at the January 11, 2017 hearing, each of which is addressed in turn.  As explained below, because Debtor's arguments do not identify any errors of law, clearly erroneous findings of fact, or any clear error of judgment, Debtor fails to raise questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry such that the court determines that Debtor has not made a strong showing of likelihood of success on the merits.

### A.  Debtor's Motion for Stay Pending Appeal

Debtor in his Motion for Stay Pending Appeal argues that that the court erred when it granted Trustee's Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens; (2) Approving Overbid Procedure; (3) Approving Payment of Real Estate Brokers' Commissions; (4) Finding Purchasers are Good Faith Purchasers; and (5) if Necessary, Directing the United States Marshal to Evict the Debtors and any Third Parties from the Real Property ("Sale Motion"), ECF 168, and entered the Sale Order, ECF 191, because the court improperly denied Debtor's $175,000 claim of homestead exemption under California Code of Civil Procedure § 704.730(a)(3)(C), and although not entirely clear to the court, it appears that Debtor argues that the court erred by applying the wrong exemption amount when determining that there was a reasonable business justification for Trustee's decision to sell the property because if the $175,000 exemption amount was applied, there would not be net equity to realize for creditors.

Nonetheless, at no time during the December 13, 2016 hearing on the Sale Motion or through the Sale Order did the court deny any exemption claim by Debtor.  *Sale Order* ("The court does not decide the amount of exemption claimed by Debtor at this time since

1  the issue was only raised as to whether the Trustee's sale motion was supported by a

2  reasonable business justification . . . ."). Further, Debtor has never claimed an exemption

3  of $175,000 on the Pine Bluff Property. In Debtor's second amended schedules, the last

4  time Debtor amended his Schedule C, Debtor claimed an exemption of $5,182.50 under

5  California Code of Civil Procedure § 703.140(b)(5). ECF 14 at 9.

6        At the hearings on the Sale Motion and Debtor's Motion to Compel Abandonment

7  ECF 161, in determining that a sale would yield net equity for creditors, the court

8  thoroughly analyzed several different permutations reflecting various inputs and based

9  thereupon, held that the sale of the Pine Bluff Property was within the reasonable

10 business judgment of Trustee based on its analysis of the projected and actual value

11 from the sale. In considering Debtor's Motion, the court has reviewed its holding and

12 confirms that there was no error in granting the Sale Motion based on the numbers which

13 the court reviews below. Specifically, as detailed below, the court considers whether a

14 sale would yield net equity for creditors based upon the $5,182.50 homestead exemption

15 actually claimed by Debtor, a $75,000 homestead exemption that Debtor might be

16 entitled to claim if he amends his schedule C, zero income tax on capital gain as argued

17 by Trustee, income tax on capital gain of $97,600 as argued by Debtor, the initial

18 proposed bid of $1,200,000, and the final overbid of $1,353,000.

19        **i.   Net Equity Calculation Based Upon Income Tax on Capital Gain**

20             **of Zero, Homestead Exemption of Zero, and Proposed Bid of**

21             **$1,200,000**

22        The trustee's calculations of net equity were as follows:

23        Opening bid                    $1,200,000.00

24        Real property tax claim        [$4,805.15]

25        First trust deed claim         [$574,382.27]

26        Second trust deed claim        [$356,517.84]

27        Costs of sale (8%)             [$96,000.00]

28

1       Projected net equity                   $168,297.74

2 Sale Motion, ECF 168 at 9.

3               **ii.  Net Equity Calculation Based Upon $97,600 Income Tax on**

4                    **Capital Gain, Homestead Exemption of Zero, and Proposed Bid**

5                    **of $1,200,000**

6       Debtor argued at the hearing on Debtor's Motion to Compel Abandonment that

7 Trustee did not take into account income taxes on the capital gain from the sale.  *See*

8 Debtor's Supplement to Motion to Compel Abandonment, ECF 177 at 18.  Trustee

9 argued that his tax analysis indicated that there was no income tax liability for a capital

10 gain based on the income tax exclusion under 26 U.S.C. § 121 and the adjusted cost

11 basis of the property.  *Audio Recording of Hearing on Motion to Compel Abandonment*,

12 December 13, 2016 at 4:25-4:26 p.m.  Debtor argued that the income tax liability from the

13 capital gain on the sale was $97,600, Debtor's Supplement to Motion to Compel

14 Abandonment, ECF 177 at 18 (Debtor's motion to compel abandonment heard and

15 argued at same time as Trustee's Sale Motion), Debtor's Comparative Analysis of Costs

16 to the Estate ("CACE"), Exhibit E to Debtor's Opposition to Trustee's Sale Motion, ECF

17 179, filed on December 8, 2016, and accepting this figure for the sake of argument, there

18 would still be net equity from the sale to pay unsecured creditors in a Chapter 7 case:

19       Income tax on capital gain            [$97,600.00]

20       (Debtor's Supplement to Motion

21       to Compel Abandonment, ECF 177)

22       Adjusted projected net equity       $70,687.74

23       After considering Debtor's tax figure, the court determined that there would be net

24 equity to pay creditors, indicating the reasonableness of Trustee's business judgment to

25 sell the property.  *See* 3 Resnick and Sommer, *Collier on Bankruptcy*, ¶ 363.02[4] at 363-

26 18 - 363-20 and nn. 56 – 65a (16th ed. 2016) ("In determining whether to approve a

27 proposed sale under section 363, courts generally apply standards that, although stated

28

various ways, represent essentially a business judgment test. . . . the bankruptcy court reviews the trustee's (or debtor in possession's) business judgment to determine independently whether the judgment is a reasonable one."), *citing inter alia, Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063 (2nd Cir. 1983).

### iii. Net Equity Calculation Based Upon $97,600 Income Tax on Capital Gain, Debtor's $5,182.50 Claimed Homestead Exemption, and Proposed Bid of $1,200,000

Debtor argued that Trustee did not take into account Debtor's homestead exemption on the Pine Bluff Property.  ECF 177.  Trustee argued that taking Debtor's last claimed homestead exemption of $5,182.50 as reflected on Debtor's last amended bankruptcy schedules filed on June 12, 2012 into account resulted in net equity from the sale to pay unsecured creditors.  ECF 11.  Accepting this figure for the sake of argument still showed that there would be net equity from the sale to pay unsecured creditors in a Chapter 7 case:

Last stated homestead exemption          [$5,182.50]

Further adjusted net equity               $65,515.74

In the court's view, Trustee could reasonably rely on what exemption amount was actually of record from Debtor's last amended schedules.   Debtor argued that he could and would amend his claim of a homestead exemption upwards in the future, and Trustee stated that he would accept that Debtor might be entitled to claim a higher exemption.  *Audio Recording of Hearing on Sale Motion*, December 13, 2016 at 4:46 p.m.

The court determined that it was reasonable for Trustee to exercise his business judgment to sell the property based on the actual claimed exemption amount, notwithstanding any future claim of a higher exemption, particularly in light of the potential of overbidding at a sale of the property which would realize more value.  *Audio Recording of Hearing on Motion to Compel Abandonment*, December 13, 2016 at 4:48-4:49 p.m.

**iv. Net Equity Calculation Based Upon $97,600 Income Tax on**

**Capital Gain, Debtor's Hypothetical $75,000 Claimed Homestead**

**Exemption, and Proposed Bid of $1,200,000**

Debtor argued that the court should consider a higher amount because he intended to amend his schedules to claim a higher exemption because he was 58 years old and had limited gross annual income as of 2016, and was thus entitled to a homestead exemption of $175,000 for an individual aged 55 with gross annual income of $35,000 or less under California Code of Civil Procedure § 704.730(a)(3)(C). *Audio Recording of Hearing on Motion to Compel Abandonment*, December 13, 2016 at 4:07-4:10 p.m. Nonetheless, this argument lacks merit because in a bankruptcy case, an exemption is determined as of the date that the bankruptcy petition was filed, which was May 7, 2012 in this case. *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012), *citing*, *White v. Stump*, 266 U.S. 310, 313 (1924) ("Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."); *In re Mayer*, 167 B.R. 186, 188 (9th Cir. BAP 1994) ("Exemptions are determined as of the date the bankruptcy petition was filed."), *citing inter alia, Owen v. Owen,* 500 U.S. 305 (1991); Debtor's Bankruptcy Petition, ECF 1, filed on May 7, 2012. The record shows that on that date, May 7, 2012, Debtor was four years younger and less than age 55, and his last amended bankruptcy schedules filed on June 21, 2012, indicate that his gross monthly income as of the date of the bankruptcy petition on May 7, 2012 is $24,491.00, which annualized ($24,491.00 times 12 months) was $293,892.00. ECF 14 at 13.

Thus, as a matter of law, Debtor would not be entitled to claim an enhanced homestead exemption of $175,000 because the record indicates that he did not qualify for any such exemption on the petition date on May 7, 2012. California Code of Civil Procedure § 704.730(a)(3)(C); *see also, In re Mayer*, 167 B.R. at 189. At most, Debtor could claim the regular homestead exemption of $75,000 as a single individual under California Civil Code of Civil Procedure § 704.730(a)(1), which Debtor previously did on

his prior schedules on June 12, 2012, ECF 11 at 10, before he amended them again on June 21, 2012.

If Debtor could claim a homestead exemption of $75,000 against the sale of the Pine Bluff Property and assuming Debtor's income tax computation of $97,600 is correct, which Trustee disputes, and no overbidding at the sale, the net equity would be:

| | |
|---|---|
| Adjusted projected net equity | $70,687.74 |
| Further adjusted net equity | [$4,312.26] |

### v. Net Equity Calculation Based Upon $97,600 Income Tax on Capital Gain, Debtor's $5,182.50 Claimed Homestead Exemption, and $1,353,000 Overbid

Assuming Debtor's capital gain figure and currently claimed homestead exemption applied to final overbid amount:

| | |
|---|---|
| Opening bid | $1,200,000.00 |
| Real property tax claim | [$4,805.15] |
| First trust deed claim | [$574,382.27] |
| Second trust deed claim | [$356,517.84] |
| Costs of sale (8%) | [$96,000.00] |
| Projected net equity | $168,297.74 |
| Income tax on capital gain | [$97,600.00] |
| @$1,200,000.00 | |
| Adjusted projected net equity | $70,687.74 |
| Additional gain from final overbid | |
| @$1,353,000.00 | $153,000.00 |
| Additional costs of sale (8%) | [$12,240.00] |

Additional tax on capital gain

@25.3% (15% federal, 10.3% state) [1]    [$38,709.00]

Projected net equity from final sale    $102,051.00

Debtor's currently claimed

homestead exemption    [$5,182.50]

Projected net equity from final sale

after Debtor's actually claimed

homestead exemption    $96,868.50

### vi. Net Equity Calculation Based Upon $97,600 Income Tax on Capital Gain, Debtor's $75,000 Hypothetical Homestead Exemption, and $1,353,000 Overbid

Assuming Debtor's income tax figure, a hypothetical exemption of $75,000 and the actual overbid amount, the computation of net equity is as follows:

Projected net equity after final sale    $102,051.00

Hypothetical homestead exemption    [$75,000.00]

Projected net equity after final sale

after hypothetical $75,000 homestead

exemption    $27,051.00

Even if Debtor may successfully claim a regular homestead exemption of $75,000, the figure of $27,051 is based on the assumption that Debtor's argument that his cost basis is lower than Trustee believes and that the tax liability is as high as he estimates is correct. Nonetheless, these computations show that Trustee reasonably exercised his business judgment to sell the Pine Bluff Property to realize the value of the net equity of

---

[1] The capital gains tax rates came from Internal Revenue Service, IRS Publication 17, Your Federal Income Tax for Individuals (2016) and California Franchise Tax Board, California Forms & Instructions 541: 2015 Fiduciary Income Tax Booklet.

the property for the bankruptcy estate based on the present and actual claim of a

homestead exemption.[2]

Moreover, Debtor's Motion for Stay Pending Appeal asserts the following issues:

(2)    Did the bankruptcy have jurisdiction under 28 U.S.C. 1334(b) over the state law claims of the plaintiff without review of the California Exemption Law?
(3)    Did the bankruptcy court err when it did not permit Debtor an Evidentiary Hearing after Trustee raised a presumption regarding a claim or defense for which state law supplies the rule of decision;
(4)    Did the bankruptcy court err when it did not permit Debtor an Evidentiary Hearing where documents were introduced that had not been served on Debtor and used by Trustee as a presumption without having the burden of producing evidence to rebut the presumption;
(5)    Did the bankruptcy court err in interpreting the United States Tax code for basis and tax liabilities?
(6)    Did the bankruptcy court err when it did not permit Debtor an Evidentiary Hearing and permitted the Trustee a presumption of tax liability without the present of Trustee's CPA in court or without having the burden of producing evidence to rebut the such presumption.

Motion at 3-4. These arguments are not well-taken because the court did not decide and

did not need to decide the amount of Debtor's homestead exemption, and for the

purposes of deciding the Sale Motion, the court utilized the computations asserted by

Debtor in his opposition papers to the Sale Motion, including his figures for capital gains

taxes on a sale of the property, and these figures as discussed by the court at the

hearing on the Sale Motion and reexamined above demonstrate that a sale as proposed

in the Sale Motion would realize net value for the estate to pay creditor dividends in this

---

[2]    In the Sale Order, the court stated that it did take a $175,000 exemption on the Pine Bluff Property into account when determining that there was a reasonable business justification for Trustee's decision to sell the property, specifically finding the following: "Even if the court considers the amount of the homestead exemption of $175,000 claimed by Debtor, there was a reasonable business justification for the Trustee's decision to sell the property in that there would be net equity to realize for creditors based on the Debtor's own numbers, and based on the overbidding at the auction of the property, even assuming Debtor's claimed exemption amount, there was net equity realized for the estate in the sale of the property. " *Sale Order* at 5-6. In reconsidering this statement on the instant motion for stay pending appeal, the court now believes that this statement was an incorrect overstatement in that as the computations would show a negative net equity if an exemption of $175,000 were applied, but as shown herein, Debtor cannot make any valid showing that he qualifies for such an enhanced exemption, and thus, Trustee's sale of the property was a reasonable exercise of his business judgment.

case and validate Trustee's exercise of his business judgment in selling the property as reasonable. *Audio Recording of Hearing on Sale Motion,* December 13, 2016 at 4:47-4:48 p.m., *citing,* Supplement to Debtor's Motion to Compel Abandonment of the Property Located at 1175 Pine Bluff Drive, Pasadena, California and the Adjacent Raw Land, ECF 177; *see also, Audio Recording of Hearing on Debtor's Motion to Compel Abandonment,* December 13, 2016 at 4:47-4:48 p.m. *citing,* Supplement to Debtor's Motion to Compel Abandonment of the Property Located at 1175 Pine Bluff Drive, Pasadena, California and the Adjacent Raw Land, ECF 177. Because it is undisputed that, even using the tax figures offered by Debtor, and allowance of a hypothetical homestead exemption of $75,000, the sale would yield net equity for creditors, the court determined that an evidentiary hearing was unnecessary, and based thereupon, the court now determines that as to these points, Debtor has not met his burden of demonstrating that any errors of law, clearly erroneous findings of fact, or any clear error or judgment were committed by the court, and accordingly, Debtor has not made a strong showing of likelihood of success on the merits with respect to the arguments presented in his Motion.

### B. Debtor's Supplemental Brief

Debtor's Supplemental Brief argues that the court erred in granting the Sale Motion because Trustee had effectively abandoned the Pine Bluff Property under 11 U.S.C. § 554 in 2013 through Trustee's Notice of Intent to Abandon, and thus, the Pine Bluff Property was no longer property of the estate. While this argument was not raised in Debtor's original Motion, which he wrote as a self-represented litigant, and the argument was first raised in the Supplemental Brief written by his newly retained counsel, the court grants some latitude to Debtor and considers his supplemental argument regarding abandonment. However, after considering this argument, the court determines that it is not well-taken.

First, Debtor's argument is an attempt to circumvent the finality of the court's prior ruling in its Order Denying as Ineffective that Certain Notice of Proposed Abandonment of

1 Property of the Estate Filed by Chapter 7 Trustee on January 16, 2013 [Docket No. 42],

2 ECF 127, that the Pine Bluff Property was not abandoned through Trustee's Notice of

3 Intent to Abandon.  Under *Matter of SK Foods, L.P.*, 676 F.3d 798, 802 (9th Cir. 2012), a

4 bankruptcy court order is considered final where it (1) resolves and seriously affects

5 substantive rights and (2) finally determines the discrete issue to which it is addressed.

6 Because it resolved and seriously affected whether Trustee's Notice of Intent to Abandon

7 was effective and finally determined that discrete issue, the Order Denying as Ineffective

8 that Certain Notice of Proposed Abandonment of Property of the Estate Filed by Chapter

9 7 Trustee on January 16, 2013 [Docket No. 42], is a final order.  Further, because no

10 parties appealed that order within the one year window under Federal Rule of Civil

11 Procedure 60(c), incorporated by Federal Rule of Bankruptcy Procedure 9024, that

12 order's determination that Trustee's Notice of Intent to Abandon was ineffective and its

13 finding that all creditors were not served therewith is now law of the case and cannot be

14 challenged through this Motion.  *Musacchio v. United States,* __ U.S. __, __, 136 S.Ct.

15 709, 716 (2016) ("when a court decides upon a rule of law, that decision should continue

16 to govern the same issues in subsequent stages in the same case.")(citations omitted).

17    Second, Debtor's argument is based on the erroneous factual premises that (1)

18 Ms. Hurren is not a creditor under the Bankruptcy Code and thus, was not entitled to

19 notice of Trustee's Notice of Intent to Abandon filed and served in 2013 or entitled to set

20 aside any abandonment and (2) that because Ms. Hurren was not a creditor, the Notice

21 of Intent to Abandon was effective.  However, in sustaining Ms. Hurren's opposition to

22 Trustee's Notice of Intent to Abandon, the court necessarily determined that Ms. Hurren

23 was a creditor entitled to notice of Trustee's intent to abandon the property under 11

24 U.S.C. § 554 and Federal Rule of Bankruptcy Procedure 6007.

25    Under Federal Rule of Bankruptcy Procedure 6007(a), "Unless otherwise directed

26 by the court, the trustee or debtor in possession shall give notice of a proposed

27 abandonment or disposition of property to the United States trustee, *all creditors* . . . . "

28

1   (emphasis added).  Regarding whether Ms. Hurren was a creditor, under 11 U.S.C. §

2   101(10), "The term 'creditor' means—(A) entity that has a claim against the debtor that

3   arose at the time of or before the order for relief concerning the debtor . . . ."  Under 11

4   U.S.C. § 101(5), "The term 'claim' means—(A) right to payment, whether or not such right

5   is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

6   disputed, undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. §

7   507(a)(7) recognizes an unsecured claim for individuals who make deposits of money

8   before the commencement of a case in connection with a lease or rental of property.  *See*

9   *also*, *In re Barakat*, 99 F.3d 1520 (9th Cir. 1996) (recognizing that Chapter 11 debtor

10  landlord's tenants who pre-petition provided security deposits to debtor landlord had

11  contingent and unliquidated claims).

12          Ms. Hurren is a creditor in this bankruptcy case within the meaning of the

13  Bankruptcy Code because Ms. Hurren was a tenant of Debtor at the property located at

14  80 Arlington Dr., Pasadena, California, from December 2006 to April 2013 who had

15  deposited $7,500 with Debtor on December 11, 2006, pre-petition, as a security deposit.

16  ECF 205, Exhibit C.  At the time Debtor commenced this bankruptcy case on May 7,

17  2012, Ms. Hurren had a contingent and unliquidated claim for payment of her tenant

18  security deposit under California law against Debtor that he was holding as of the petition

19  date as her landlord, and while this claim may not have been payable as of the petition

20  date, it was a claim for payment for purposes of a claim under 11 U.S.C. § 101(5), which

21  is to be broadly construed, and accordingly, Ms. Hurren was a creditor within the

22  meaning of 11 U.S.C. 101(10).  *See* 2 Resnick and Sommer, *Collier on Bankruptcy*, ¶

23  101.05[1] at 101-39 and nn. 10 and 11, *citing inter alia, FCC v. NextWave Personal*

24  *Communications, Inc.*, 537 U.S. 293 (2003) and *In re Udell*, 18 F.3d 403 (7th Cir. 1994)

25  ("By fashioning a single definition of 'claim' in the Code, Congress intended to adopt the

26  broadest available definition of that term.  The Supreme Court has repeatedly reiterated

27  this principle and has declined all invitations to exclude rights to payment from the

28

1    definition of claim."). Thus, in order to abandon the property, Trustee was required to

2    give notice of his intent to abandon to all creditors, including Ms. Hurren. *Sierra*

3    *Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 709 (9th Cir. 1986) (*citing*

4    Federal Rule of Bankruptcy Procedure 6007 and holding that there is no abandonment

5    without notice to all creditors). Because Ms. Hurren was not aware of Trustee's Notice of

6    Intent to Abandon until August 17, 2015, ECF 95, under *Sierra Switchboard Co.*, there

7    was no abandonment of the Pine Bluff Property. *Id.*

8         Moreover, even if Ms. Hurren were not a creditor, the court would still determine

9    that Trustee's Notice of Intent to Abandon was ineffective because not all creditors were

10   served with Trustee's Notice of Intent to Abandon. A review and comparison of the proof

11   of service attached to the Notice of Intent to Abandon with Debtor's first and second

12   amended schedules that only a few creditors, but not all creditors, were served with

13   Trustee's Notice of Intent to Abandon. Accordingly, under *Sierra Switchboard Co.*,

14   because not all creditors were served with notice of Trustee's intent to abandon, there

15   was no abandonment of the Pine Bluff Property.

16        Additionally, citing 10 Resnick and Sommer, *Collier on Bankruptcy*, ¶ 6007.03[2] at

17   6007-8 (16th ed. 2012), Debtor argues that failure to serve a creditor does not render an

18   abandonment ineffective because such failure allows a creditor to seek relief under

19   Federal Rule of Civil Procedure 60. Debtor further argues that assuming Ms. Hurren was

20   a creditor, her opposition to Trustee's Notice of Intent to Abandon was untimely under

21   Federal Rule of Civil Procedure 60, and in any event, Ms. Hurren could not have set

22   aside Trustee's abandonment because she was not a creditor, having no right to

23   payment as of the petition date.

24        The court determines that Debtor's arguments are fallacious and lack merit.

25   Debtor's argument based on *Collier's* that failure to serve a creditor does not render an

26   abandonment ineffective, is not based on what Collier's actually says, which is: "If an

27   abandonment order is entered but is later determined that a party entitled to notice did

28

1   not receive notice, that party may be able to move for relief from the order." 10 Resnick

2   and Sommer, *Collier on Bankruptcy*, ¶ 6007.03[2] at 6007-9. *Collier's* does not say what

3   Debtor argues: that failure to give notice of intent to abandon to a creditor does not

4   render an abandonment ineffective. If *Collier's* said what Debtor argues, it would be

5   contrary to the Ninth Circuit's holding in *Sierra Switchboard Co.,* that there is no

6   abandonment without notice to all creditors, and which is controlling on this court unlike

7   nonbinding authority such as *Collier's.* Thus, the court determines that as to the

8   argument that the Pine Bluff Property had already been abandoned, Debtor has not met

9   his burden of proving that any errors of law, clearly erroneous findings of fact, or any

10   other clear error or judgment were committed by the court and accordingly, Debtor has

11   not made a strong showing of likelihood of success on the merits here.

### C. Oral Argument at January 11, 2017 hearing

13       At the January 11, 2017 hearing on the Motion, Debtor argued that the court did

14   not afford Debtor due process because there was no motion requesting a determination

15   that the Pine Bluff Property was not abandoned. *Audio Recording of Hearing*, January

16   11, 2017, at 3:13-3:16 p.m. Although the Motion relates to the Sale Order, Debtor's

17   argument appears to be that because Debtor was denied due process when the court

18   entered the Order Denying as Ineffective that Certain Notice of Proposed Abandonment

19   of Property of the Estate Filed by Chapter 7 Trustee on January 16, 2013 [Docket No.

20   42], ECF 127, the Pine Bluff Property was abandoned, and thus, the court did not have

21   jurisdiction over the Pine Bluff Property when it approved the sale through the Sale

22   Order. Again, Debtor's argument is not well taken.

23       First, Debtor has not cited any authority for the proposition that the court could not

24   determine that property was not abandoned through a Chapter 7 trustee's notice of intent

25   to abandon, or that the court could not award Trustee such declaratory relief. The

26   hearing on Trustee's Notice of Intent to Abandon came before the court on December 8,

27   2015 because the creditor, Ms. Hurren, as discussed above, filed a notice of opposition

to the Notice of Intent to Abandon, ECF 96, which she was entitled to do pursuant to the

terms of the Notice of Intent to Abandon and Local Bankruptcy Rule 6007-1(e).  Although

the Notice of Intent to Abandon and Local Bankruptcy Rule 6007-1 provide that an

objection must be filed and served not more than 14 days after service of the notice,

because Ms. Hurren was never properly served with Trustee's Notice of Intent to

Abandon, the court determines that her opposition was timely.  The court also observes

that Debtor filed a reply to Trustee's notice of hearing on the notice of intent to abandon,

ECF 121, and appeared and argued at the December 8, 2015 hearing on the notice of

intent to abandon.  Debtor was thus afforded the opportunity to argue at the hearings on

Trustee's Notice of Intent to Abandon that it was effective, the court considered his

written reply to Ms. Hurren's opposition, and the court fully considered his written

submissions and oral argument in making its ruling.  Accordingly, Debtor was afforded

due process through these proceedings.

Therefore, the court determines that as to the argument that Debtor was not

afforded due process when the court entered the Order Denying as Ineffective that

Certain Notice of Proposed Abandonment of Property of the Estate Filed by Chapter 7

Trustee on January 16, 2013 [Docket No. 42], ECF 127, Debtor has not met his burden of

proving that any errors of law, clearly erroneous findings of fact, or any other clear error

or judgment were committed by the court and accordingly, Debtor has not made a strong

showing of likelihood of success on the merits here.

For the foregoing reasons, the court determines that Debtor has not shown a

strong showing of a likelihood of success on appeal, which weighs against granting the

Motion.

## II.    Irreparable Injury to Debtor

The second factor under *Lair v. Bullock* is whether the applicant will be irreparably

injured absent a stay.  Debtor's only cognizable right in the Pine Bluff Property is the

exemption he claimed against the Pine Bluff Property.  Even if it was his residence at one

time, Debtor does not have a per se right to reacquire the Pine Bluff Property, Debtor did

not bid on the Pine Bluff Property at the sale, nor has Debtor ever expressed to the court

any intention to reacquire the Pine Bluff Property from Trustee.  Debtor's claimed

exemption against the Pine Bluff Property of $5,182.50 is adequately assured by receipt

of sale funds in excess of this amount.

        This factor does not favor Debtor since when he filed this Chapter 7 bankruptcy

case, Debtor knew or should have known that Trustee would be liquidating his

nonexempt assets to pay creditors, which would include available nonexempt equity in

the Pine Bluff Property.  While Debtor feels that losing his residence is an irreparable

injury, this is something that was more directly caused by Debtor filing his bankruptcy

petition then by Trustee's sale.  Although Debtor will lose his right to attempt to reacquire

the Pine Bluff Property from Trustee, something that Debtor has not demonstrated any

intent of doing, in the court's view, the fact that Debtor will not suffer an injury through the

sale that Debtor would not suffer otherwise cuts against a finding of irreparable injury

absent a stay pending appeal.  Because Debtor's sole cognizable right in the Pine Bluff

Property is his exemption, which is protected by the sale, the court determines that this

factor weighs against issuance of a stay.  *See, In re Frantz,* 534 B.R. 378, 389 (Bankr. D.

Idaho 2015), *citing inter alia, Klein v. Chappell  (In re Chappell),* 373 B.R. 73, 77-82 (9th

Cir. BAP 2007) (discussing extent of debtor's interest under a federal homestead

exemption, and noting that it does not extend to the entirety of the residential real

property, stating *inter alia* "the debtor's property remains property of the estate to the

extent that its value exceeds the statutory amount which the debtor is permitted to

exempt.").

        **III.    Substantial Injury to Other Interested Parties**

        The third factor for stay pending appeal is that issuance of a stay will substantially

injure other parties in the proceeding.  Imposing a stay will result in potential harm and

prejudice to creditors of the estate due to the delay in administration of the estate, and

the potential loss of the sale of the Pine Bluff Property.  Further, a stayed sale will also expose the estate to additional costs to secure and maintain the Pine Bluff Property for the duration of the appeal.  Moreover, it is undisputed that Debtor has not been paying mortgage loans on the Pine Bluff Property, and thus, increasing the mortgage debt on the property, draining the remaining equity in the Pine Bluff Property and continuing the estate's risk of loss to foreclosure by the mortgage lenders.  *See, e.g., In re Frantz,* 534 B.R. at 390.  Because closing the present sale is in the best interests of the estate and its creditors because value is realized from the sale to pay creditors without risk of foreclosure by the mortgage lenders, and a stay of the sale would put the estate's value in the property at further risk, incur additional expenses to the estate pending resolution of Debtor's appeal, and further lead to a deterioration of the available equity in the Pine Bluff Property due to the mounting unpaid mortgage debt, the court can find that there is substantial harm to Trustee and the estate he represents if a stay pending appeal is imposed.  Accordingly, the court determines that this factor weighs against issuance of a stay pending appeal.

### IV.    Public Interest

The fourth factor for stay pending appeal based on the public interest is not applicable here and does not weigh for or against a stay pending appeal.  *See, In re Frantz,* 534 B.R. at 390.

### CONCLUSION

In conclusion, as discussed above, the court determines that Debtor has not demonstrated that any of the *Lair v. Bullock* factors, most notably, the two critical factors of showing a likelihood of success on the merits and irreparable harm if stay pending appeal is not granted, weigh in favor of imposing a stay pending appeal.  For the foregoing reasons, the court denies the Motion.

///

///

1    Having ruled on the Motion, the further hearing on the Motion set for January 18,

2  2017 at 2:00 p.m. is hereby vacated.  No appearances on the Motion are required on

3  January 18, 2017.

4    IT IS SO ORDERED.

5                                             ###

Date: January 18, 2017

_____
Robert Kwan
United States Bankruptcy Judge